**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

E.W.-G., *et al.*,

Plaintiffs,

v.

DISTRICT OF COLUMBIA,

Defendant.

Civil Action No. 20-2806 (CKK)

**MEMORANDUM OPINION**
(March 22, 2023)

E.W.-G., a former student ("Student") in the District of Columbia, and her parents (collectively, "Plaintiffs"), filed this action against the District of Columbia ("Defendant" or "the District"), to challenge a July 7, 2020 Hearing Officer Determination ("HOD") that rejected their claim that E.W.-G. had been denied a free and appropriate public education for the 2019-2020 school year, pursuant to the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. §§ 1400-1482. The parties filed cross-motions for summary judgment regarding that HOD, and upon consideration thereof, this Court issued its [16] Memorandum Opinion and Order, denying without prejudice the parties' motions and remanding the case to the Hearing Officer to "adequately address whether the District's IEP was 'reasonably calculated' to meet E.W.-G.'s academic and behavioral needs." Memorandum Opinion and Order, ECF No. 16, at 2.

On March 25, 2022, the Hearing Officer issued his Hearing Officer Determination on

Remand, which was amended and re-issued on March 27, 2022 ("Am. HOD on Remand"). *See* Ex. 1 to Defendant's [26] Opposition to Third Motion for Summary Judgment. The Court set a briefing schedule for dispositive cross-motions related to that Amended HOD on Remand, and those motions are now ripe for resolution. Upon consideration of the Plaintiffs' [24] Third Motion for Summary Judgment, and Defendant's [27] Cross Motion for Summary Judgment, the relevant legal authorities, and the entire record herein, the Court shall DENY Plaintiffs' Third Motion and GRANT Defendant's Cross Motion, for the reasons explained in detail below.[1] A separate Order accompanies this Memorandum Opinion.

## I. BACKGROUND

### A. Statutory Framework

The IDEA was enacted to "ensure that all children with disabilities have available to them a free appropriate public education ("FAPE") that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." *M.G. v. District of Columbia*, 246 F. Supp. 3d 1, 7 (D.D.C. 2017) (citing 20 U.S.C. § 1414 (d)(1)(A)), *see also Boose v. District of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015). Once a child is identified as disabled, the school district must convene a meeting of a

[1] In connection with this Memorandum Opinion and Order, the Court considered: (1) Plaintiffs' [24] Third Motion for Summary Judgment ("Pls.' Mot.") and their Memorandum in support thereof ("Pls.' Mem.") and the exhibits attached thereto; (2) Defendant's [26] Opposition to the Third Motion and Cross Motion for Summary Judgment [with the Cross Motion docketed separately at ECF No. 27] ("Def.'s Opp'n") and the Amended Hearing Officer Determination on Remand ("Am. HOD on Remand"), attached thereto as ECF No. 26-1; (3) Plaintiffs' [28] Opposition to Defendant's Cross Motion and Reply in support of Third Motion ("Pls.' Reply"); (4) Defendant's [30] Reply to Plaintiffs' Opposition ("Def.'s Reply"); and (5) the entire record in this case, including the Administrative Record, ECF Nos. 8, 9, 23. In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

multi-disciplinary team to develop an individualized education program ("IEP") for the student. *See* 20 U.S.C. § 1414 (d)(1)(A).  The IEP "is the centerpiece of the statute's education delivery system for disabled children[.]"  *Endrew F. v. Douglas Cty. Sch. Dist. RE-1*, 580 U.S. 386, 391 (2017) (citation omitted).

The IDEA requires that a school system "offer an IEP that is reasonably calculated to enable a [disabled student] to make progress in light of the child's circumstances."  *Id.* at 399.  To achieve this benchmark, an IEP must include a variety of information, including the child's current levels of academic achievement and functional performance, measurable annual goals, how the child's progress towards the goals will be measured, and the special education and related services to be provided to the child.  20 U.S.C. § 1414 (d)(1)(A).  The IEP must be formulated in accordance with statutory requirements that not only require consideration of the child's individual circumstances but also emphasize collaboration among parents and educators.  20 U.S.C. § 1414 (d)(1)(B); *see also* 20 U.S.C. § 1415 (b)(1) (the IDEA guarantees parents of disabled children the opportunity to participate in the evaluation and educational placement process).

Once the IEP is developed, the school system must provide "an appropriate educational placement that comports with the IEP."  *Alston v. District of Columbia*, 439 F. Supp. 2d 86, 90 (D.D.C. 2006).  "If no suitable public school is available, the school system must pay the costs of sending the child to an appropriate private school."  *District of Columbia v. Vinyard*,  901 F. Supp. 2d 77, 80-81 (D.D.C. 2012) (Kollar-Kotelly, J.) (quoting *Reid v. District of Columbia*, 401 F.3d 516, 519 (D.C. Cir. 2005)).  However, parents who "unilaterally" place a child with a disability in a private school, without consent of the school system, "do so at their own financial risk."  *Florence Cty. Sch. Distr. Four v. Carter*, 510 U.S. 7, 15 (1993) (quoting *School Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373-74 (1996)).  To qualify for tuition

reimbursement under the IDEA, a plaintiff must demonstrate that: (1) the school district failed to provide a FAPE; (2) the plaintiff's private placement was suitable; and (3) the equities warrant reimbursement for some or all of the cost of the child's private education. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009).

**B. Factual Background**[2]

E.W.-G. was a 13-year old student residing in the District of Columbia with her parents at the time of the due process hearing in this case, and she qualifies for special education under the IDEA disability classification Specific Learning Disabilities ("SLD"). Am. HOD on Remand, ECF No. 26-1, at 3. E.W.-G. experiences difficulties "understanding language organization, language processing, and [has] compromised lexical/semantic skills" that impact her in the classroom setting. Administrative Record ("AR") 224. And while E.W.-G. performs in the "average to above-average range" with her cognitive functions, she has academic "deficits" in math calculation, problem solving, reading comprehension, and written expression. AR 218-233. Moreover, E.W.-G. struggles behaviorally to regulate her emotions and adjust to her social settings within a general education school environment. AR 217-227.

For the 2018-2019 academic school year, E.W.-G. attended sixth grade at a small private

---

[2] This factual background section reiterates some of the factual background from the Court's previous Memorandum Opinion and Order, ECF No. 16, with additional citations to the Administrative Record, consistent with the facts summarized in Plaintiffs' Motion and in Defendant's Opposition. Citations to the Plaintiffs' separate Statement of Material Facts as to Which there is No Dispute, ECF No. 24-2, are not included. Pursuant to LCvR 7(h)(2), the requirement under subsection (h)(1) to submit a statement of undisputed material facts for or in opposition to summary judgment "shall not apply to cases in which judicial review is based solely on the administrative record [but instead], [i]n such cases, motions for summary judgment and oppositions thereto shall include a statement of facts with references to the administrative record." LCvR 7(h).

school in Bethesda, Maryland, called Oneness Family School ("Oneness"). AR 626. Within Oneness, E.W.-G. was placed in general education classes with approximately 17-18 students and two teachers. AR 9. Academically, E.W.-G. started her sixth-grade year on grade level. AR 7-8. But E.W.-G. became "easily overwhelmed by sounds" and would sometimes "elope from the classroom." AR 9. E.W.-G. also developed a habit of laughing at her classmates and making "mean-spirited comments to them." AR 9. Laura Solomon, Ed.D., the parent's educational consultant, was brought into the school to collaborate with the therapist and school staff and develop a behavior plan. AR 482-483. Furthermore, Oneness required that E.W.-G.'s parents provide her with an academic tutor, and E.W.-G. also received counseling from a licensed social worker. AR 627-629. Notwithstanding these efforts, E.W.-G. became increasingly "disruptive" and "difficult to manage" during the 2018-2019 school year, and in March 2019, Oneness "informed E.W.-G.'s parents that [E.W.-G.] was not welcome to return" for the 2019-2020 academic year. AR 11, 637.

E.W.-G. underwent some academic and psychological testing while at Oneness and also subsequently. On January 6, 2019, Dr. Solomon completed an educational assessment of E.W.-G. AR 10. E.W.-G. scored in the high average range on sentence reading fluency; average in broad reading, letter-word identification, passage comprehension, basic reading skills, word attack, broad written, language, spelling, and writing samples; low average in math facts fluency; and low in broad math, calculation, applied problems, and sentence writing fluency. AR 10. On February 8, 2019, Laura Rubinoff, M.S., CCC-SLP, completed a Speech and Language Evaluation of E.W.-G. that revealed "a statistically significant Receptive and Expressive Language Disorder, characterized by challenges in actively holding onto incoming language long enough to act upon it, in understanding language that increases in length, grammatical complexity and degree of

abstraction, in verbal expression and in memory storage strength and work retrieval." AR 10-11. Ms. Rubinoff recommended that the Student "resume language and literacy treatment no less than 120 minutes per week." AR 11.

In April 2019, E.W.-G's parents initiated a "Child Referral" request to District of Columbia Public Schools ("DCPS"), asking the District to consider special education placements for E.W.-G. for the upcoming 2019-2020 school year. AR 311. On July 18, 2019, Delisa Green, DCPS Speech and Language Pathologist, completed an Independent Educational Evaluation Review of Ms. Rubinoff's evaluation and found that it "lacked discreet assessments of receptive and expressive vocabulary, which are essential elements in what is considered to be a comprehensive speech and language evaluation from DCPS." AR 11. Ms. Green conducted fluency, picture vocabulary and expressive vocabulary testing, and she noted neither a statistically significant nor clinically meaningful difference between the receptive and expressive vocabulary scores. AR 11. Accordingly, Ms. Green concluded that E.W.-G. "should be able to understand and use curriculum vocabulary on par with her age matched peers given some cues and support" although she had speech deficits requiring direct services. AR 11.

On July 25, 2019, Shannon Waters, M.A., DCPS school psychologist, completed a review of Dr. Solomon's January 6, 2019 evaluation and reviewed a Wechler Intelligence Scale (WISC-V) test of E.W.-G. conducted on January 3, 2019, where E.W.-G. was average to above average in all cognitive areas, AR 12, and she conducted a behavior assessment (Behavior Assessment System for Children). AR 246-256. Ms. Waters concluded that E.W.-G. "appears to have difficulty with self-regulation across all areas and will likely require support in and out of the classroom in the school setting," and she noted that a [Functional Behavioral Assessment] may need to be completed to determine the need for a more formal behavior plan. AR 12, 255.

On July 31, 2019, a team from DCPS convened and determined that E.W.-G. was "eligible as a student with SLD in the areas of Written Expression, Math Calculations, and Reading Comprehension, and would require specialized education in all academic areas, and related services in Behavior Support [ ] and Speech." AR 13. On August 21, 2019, DCPS held an IEP meeting for E.W.-G., and the IEP team, which included E.W.-G.'s mother, agreed to establish goals for E.W.-G. in the areas of math, reading comprehension, written expression, and behavioral self-awareness. AR 216-231. E.W.-G.'s IEP noted the E.W.-G. "demonstrates difficulty with aggression, conduct problems, anxiety, depression, anger control and withdrawal." AR 217. The IEP stated further that E.W.-G. "is able to communicate on an every day level with her peers and teachers" although she "presents weaknesses in her oral language skills" while she "presents relative strengths in her . . . speaking vocabulary, her pragmatic language skills, her vocal functioning, and speech fluency skills." AR 217. E.W.-G's IEP prescribed 15 hours per week of specialized instruction, 5 in general education and 10 outside general education, 4 hours per month of speech-language services outside general education, 4 hours per month of behavioral support services outside general education, and 1 hour per mount of speech and language consultation services. AR 228, 232-235. DCPS proposed to implement E.W.-G.'s IEP at Alice Deal Middle School ("Deal School"), where she would take science, history, and "non-core" classes, such as physical education and art, within general education classes of approximately 25 students and 1 teacher. AR 848-851; 871-874.

At the end of the meeting, Plaintiffs' counsel indicated that the family felt that E.W.-G.'s "needs are multifaced and [she] require[s] a more restrictive environment than Deal Middle School. AR 15. Plaintiffs were encouraged by DCPS to visit Deal Middle School. AR 15. On August 23, 2019, two days after the IEP meeting, Plaintiffs notified the District that they rejected

E.W.-G.'s IEP and her proposed placement at Alice Deal Middle School. AR 15. Plaintiffs unilaterally enrolled E.W.-G. at the Chelsea School for the 2019-2020 academic year. AR 15. The Chelsea School is a non-public day school in Hyattsville, Maryland, and the cost of tuition for the 2019-2020 school year was $39,000, plus an additional $3,200 for related services. AR 650, 668.

On March 19, 2020, Plaintiffs filed a request for an administrative due process hearing to challenge E.W.-G.'s August 21, 2019 IEP, under the IDEA. Plaintiffs argued that the IEP "fail[ed] to provide sufficient special education instruction outside of general education to enable [E.W.-G.] to make meaningful educational progress and that E.W.-G.'s "academic skill deficit, combined with her significant challenges with social, emotional, behavioral, and attention deficits necessitates a more restrictive placement." AR 58. Subsequently, Hearing Officer Terry Michael Banks convened an administrative hearing over the course of three consecutive days in June 2020. On July 7, 2020, the Hearing Officer issued his amended final HOD denying Plaintiffs' due process challenge to the IEP. On October 2, 2020, Plaintiffs filed a civil action in this Court to challenge the HOD under the IEP. *See* Compl., ECF No. 1, at ¶¶ 36-42.

As previously noted, Plaintiffs filed a motion for summary judgment challenging the July 7, 2020 HOD, and this Court issued its [16] Memorandum Opinion and Order remanding the case to the Hearing Officer to address "whether the District's IEP was 'reasonably calculated' to meet E.W.-G.'s academic and behavioral needs." *Id.* at 1-2. In accordance with the remand Order, the Hearing Officer held a second administrative hearing on June 16-18, 2020, via videoconference, and his [23] HOD on Remand was issued on March 25, 2022, and amended on March 27, 2022. *See* Amended HOD on Remand, ECF No. 26-1. Plaintiffs move this Court for summary judgment vacating the Amended HOD on Remand and awarding tuition reimbursement. Defendant cross-moves for summary judgment upholding the Amended HOD on Remand and denying tuition

reimbursement.

**II. LEGAL STANDARD**

"Although motions for review of an HOD are called motions for summary judgment, the Court does not follow 'a true summary judgment procedure.'" *Middleton v. District of Columbia*, 312 F. Supp. 3d 113, 128 (D.D.C. 2018) (quoting *L.R.L. ex rel. Lomax v. District of Columbia*, 896 F. Supp. 2d 69, 73 (D.D.C. 2012)); *cf.* Fed. R. Civ. P. 56. Rather, in a civil action brought to challenge a Hearing Officer's determination pursuant to the IDEA, "[a] motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the court may receive." *D.R. v. District of Columbia*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009). The motion for summary judgment is "the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *M.G. v. District of Columbia*, 246 F. Supp. 3d at 8 (citation omitted).

A court reviewing an administrative IDEA determination "shall grant such relief as the court determines is appropriate," based upon "a preponderance of the evidence." 20 U.S.C. § 1415 (i)(2)(C)); *see also Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 205-206 (1982). Courts, however, must refrain from "substitut[ing] their own notions of sound educational policy for those of the school authorities which they review." *Id.* at 206. Accordingly, "[c]ourts sitting on an IDEA appeal do not have unfettered review but must. . . give due weight to the administrative proceedings and afford some deference to the expertise of the [independent hearing officer] and school officials responsible for the child's education." *Gill v. District of Columbia*, 751 F. Supp. 2d 104, 108 (D.D.C. 2010) (citing *Lyons v. Smith*, 829 F. Supp. 414, 418 (D.D.C. 1993) (internal quotation marks omitted)). As a general matter, "a hearing

officer's findings 'based on credibility determinations of live witness testimony' are given 'particular deference' where there is no supplementation of the record." *McAllister v. District of Columbia*, 45 F. Supp. 3d 72, 76-77 (D.D.C. 2014) (citation omitted). Nonetheless, "a hearing decision 'without reasoned and specific findings deserves little deference.'" *Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. Superintendent, D.C. Pub. Schs.*, 931 F. 2d 84, 87 (D.C. Cir. 1991) (internal quotation marks omitted).

**III. ANALYSIS**

Plaintiffs argue that, in the March 27, 2022 Amended HOD on Remand, the Hearing Officer failed to properly evaluate E.W.-G.'s IEP under the requirements of the IDEA. To comply with the substantive components of the IDEA, an IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 580 U.S. at 399. The adequacy of an IEP necessarily turns on a fact-intensive assessment of a child's "unique needs," as "a focus on the particular child is at the core of the IDEA." *Id.* at 400. Inherent in this analysis is a direct focus on the specific terms of a student's IEP and an assessment of how the provisions of that IEP will further the student's academic progress. Accordingly, the hearing officer must expressly evaluate whether the specific IEP under consideration is "reasonably calculated" to achieve that goal. *Id.* at 399-400.

The IDEA also requires, however, that "to the 'maximum extent appropriate,' public schools provide students with disabilities an education in the 'least restrictive environment' possible." *Z.B. v. District of Columbia*, 888 F.3d 515, 528 (D.C. Cir. 2018) (quoting 20 U.S.C. § 1412 (a)(5)(A)). The "least restrictive environment" is the one that "most closely approximates" the education the disabled child would receive absent her disability. *Kerkam*, 931 F.2d at 86. Ultimately, "[t]he key inquiry regarding an IEP's substantive adequacy is whether, taking account

of what the school knew or reasonably should have known of a student's needs at the time, the IEP it offered was reasonably calculated to enable the specific student's progress." *Z.B.*, 888 F.3d at 524; *see id.* at 526 ("In determining whether [an] offered IEP[ ] [is] reasonably calculated to provide . . . an appropriate education, the pertinent question is what DCPS actually offered[.]")[3] In order to be "reasonably calculated," the IEP must "provid[e] personalized instruction with sufficient support service to permit the child to benefit educationally from that instruction." *Reid*, 401 F. 3d at 519.

**A. Amended HOD on Remand**

In his Amended HOD on Remand, the Hearing Officer set out lengthy Findings of Fact – including many references to the record evidence – and Conclusions of Law, which address whether DCPS denied Student a FAPE by failing to provide an appropriate IEP and placement for the 2019-20 school year. The Conclusions of Law discuss both the "appropriateness" of the IEP and "small class" environment. *See* Am. HOD on Remand, ECF No. 26-1. In this case, the Hearing Officer concluded that "the IEP [the District] developed for [E.W.-G.], and the placement it proposed, were reasonably calculated to enable [E.W.-G.] to make progress appropriate in light of her/his unique circumstances." Am. HOD on Remand, ECF No. 26-1, at 23. But Plaintiffs argue that this conclusion, and the Hearing Officer's rationale as to the appropriateness of the IEP

---

[3] In their Reply, Plaintiffs contest Defendant's statement that because the "record evidence does not demonstrate that E.W.-G. required full-time specialized instruction outside of the general education setting," the HOD should be affirmed. Pls.' Reply, ECF No. 28, at 7 (quoting Def.'s Opp'n, ECF No. 26, at 16). Although Plaintiffs themselves challenged the level of specialized instruction outside of general education, Plaintiffs submit that this is "not *the* issue;" rather, the issue is whether the "IEP offered E.W.-G. FAPE." Pls. Reply, ECF No. 28, at 7 (citing *Z.B.*, 888 F.3d at 526). The Court notes that while Defendant did make the statement that is contested by Plaintiffs, Defendant's discussion and analysis focus ultimately on whether E.W.-G.'s IEP was appropriate.

– as summarized in five paragraphs, *see* Am. HOD on Remand, ECF No. 26-1, at 17-19 – were flawed.

Specifically, the Hearing Officer found that the IEP was appropriate for the following reasons: (1) Petitioner "did not contest the Student's classification, the proposed Areas of Concern, or any of the goals proposed in the IEP" but only disagreed with the "restrictiveness of the environment," preferring a "non-public day school with significantly smaller class sizes;" (2) the program proposed by DCPS "is more than adequate to meet Student's documented academic needs;" (3) because the Student's limited academic deficits do not warrant an extensive amount of specialized instruction, it is justified only if "his/her behavior, executive functioning deficits, or inattention are so extreme as to warrant the additional service," but the record here "does not support intensive services for Student's social/emotional issues;" (4) that while it would be "inappropriate" to speculate as to the reason why Oneness School disinvited Student to return for the 2019-20 school year, the Hearing Officer noted that it was only after the Student was disinvited that the Plaintiffs' educational consultant "adopted the position that the Student's social/emotional, executive functioning, and inattentiveness made it impossible for her/him to succeed in a less than full-time special education environment with a small student to teacher ratio;" and (5) the records submitted from Oneness School "do not support that s/he presented anything other than age-appropriate inattention, which is consistent with the conclusion in the 2016 Psychological Assessment," and the only support from Oneness School that varied from this was [Ms. Chick, identified as Teacher C] reporting that the Student had "difficulty attending in one-on-one situations, in groups and during lengthy instruction, and demonstrated inappropriate interactions with his/her peers."  Am. HOD on Remand, ECF No. 26-1, at 17-19.  Each of these five "reasons," and the parties' responses thereto, will be discussed in turn.

**1. Parent's Failure to Contest the Placement**

In the instant case, at the July 31, 2019 Eligibility Team Meeting, the team "prescribed fifteen hours per week of specialized instruction, five in general education and ten outside general education, four hours per month of speech-language services outside general education, four hours per month of behavioral support services outside general education, and one hour per month of speech and language consultation services." Am. HOD on Remand, ECF No. 26-1, at 17. During the IEP meeting, E.W.-G,'s mother "agreed with virtually all aspects of the IEP; she expressed concerns about the size of the school but did not specifically object to the level of specialized instruction." *Id.* at 12. Plaintiffs assert that the parent's failure to "contest the classification, the proposed areas of Concern, or any of the goals proposed by the IEP" in this case "has no bearing on whether the proposed IEP and placement are 'reasonably calculated to enable E.W.-G. to make progress appropriate in light of her circumstances.'" Pls.' Mem., ECF No. 24-1, at 14. While Plaintiffs' failure to object to the services proposed may not be dispositive of this issue, it is certainly relevant to an inquiry regarding the appropriateness of the IEP insofar as the only objection was school size versus the amount and type of services to be provided. *See Schoenbach v. District of Columbia*,309 F. Supp. 2d 71, 89 (D.D.C. 2004) (noting that "parents must talk, or complain, when given the chance" when a child's IEP is being developed).

**2. Adequacy of the Program to Meet Student's Academic Needs**

At the Eligibility Team Meeting held on July 31, 2019, the team "determined that the Student was eligible as a student with SLD in the areas of Written Expression, Math Calculations, and Reading Comprehension, and would require specialized education in all academic areas, and related services in Behavior Support ("BSS") and Speech." Am. HOD on Remand, ECF No. 26-1, at 10. Plaintiffs argue

that this finding, acknowledged by the Hearing Officer, is inconsistent with his focus in the Amended HOD on Remand on the Student's weakness in math. *See* Am. HOD on Remand, ECF No. 26-1, at 18 (noting that E.W.-G. is a "student whose only true academic weakness is in Math"). Plaintiffs cherry-pick one sentence from the Amended HOD on Remand, ignoring the context for the Hearing Officer's statement that the Student's weakness in math was demonstrated by the Student "performing at grade level in November in all subjects [and] [e]ven in Math, the Progress Reports reveal that s/he was earning C- level grades." *Id.*

The Hearing Officer explained that "[t]he IEP provides for an hour each day of specialized instruction in each of [Mathematics, Reading, and Written Expression], "despite evidence that [E.W.-G.] is already capable of grade level work in Written Expression and Reading," and he indicated that neither Plaintiff nor her consultant or counsel raised any objections to the goals developed by the IEP team in these three areas of concern. Am. HOD on Remand, ECF No. 26-1, at 18. While the Hearing Officer may have highlighted the Student's deficits in math in the Amended HOD on remand, the Court finds that Plaintiffs' "argument" that the Hearing Officer's commentary highlights deficiencies in math has no real bearing on whether the IEP was adequate. Ultimately, the IEP team "maintained Student's classification as SLD and provided goals in Mathematics, Reading, Written Expression, Speech, and Language, and Emotional, Social and Behavioral Development." *Id.* at 17. Furthermore, the Hearing Officer made substantial reference to record evidence when he concluded that the program proposed by DCPS – "providing a substantial amount of specialized instruction" in areas where there were identified deficits – would meet E.W.-G.'s academic needs. *See, e.g.*, Am. HOD on Remand, ECF No. 26-1, at 16 (concluding that as of the August 21, 2019 IEP team meeting, E.W.-G.'s cognitive abilities measured in the average range); at 9 (referencing the school psychologist's review of the Wechsler Intelligence Scale for Children, where Student was Average to Above Average in all cognitive areas); at 7-8 (noting

Dr. Solomon's January 6, 2019 educational assessment of the Student, where she scored "in the high average range on sentence reading fluency, average in broad reading, letter-word identification, passage comprehension, basic reading skills, word attack, broad written, language, spelling, and writing sample; low average in math facts fluency; and low in broad math, calculation, applied problems, and sentence writing fluency").[4] Accordingly, the Court concludes that the Hearing Officer's properly evaluated the Student's IEP and provided an ample explanation for his conclusion that the IEP adequately met the Student's academic needs.

Plaintiffs allege additionally that the Hearing Officer does not explain why he believes "the environment in which the services would be delivered is appropriate." Pls.' Mem., ECF No. 24-1, at 16 (emphasis omitted), but the Court disagrees with this statement. The Hearing Officer indicated that "[s]ince the IEP also provides that 10 of the 15 hours per week of specialized instruction would be provided out of general education, s/he will be receiving two hours of specialized instruction per day in a small group environment, and another hour of individualized support in the general education classroom." Am. HOD on Remand, ECF No. 26-1, at 18. Furthermore, the issue of classroom environment was addressed by the Hearing Officer in the first HOD, *see* Memorandum Opinion and Order, ECF No.16, at 11 (noting that the Hearing Officer's "analysis focuses almost entirely on whether E.W.-G. should be placed in a 'small-class environment'") and was addressed further in pages 19-20 of the Amended HOD on Remand. The larger school size at Deal was addressed also in this Amended HOD on Remand; *see* ECF No. 26-1, at 21

[4] Plaintiffs state that the Hearing Officer's analysis 'ignores that while she was at Oneness, E.W.-G.'s parents were required to provide her with an academic tutor, along with counseling from a social worker." Pls.' Mem., ECF 24-1, at 16. Plaintiffs do not, however, explain the relevance of this statement, especially when the IEP provides for specialized instruction outside general education as well as behavioral support services.

(noting Student's negative reaction to Deal Middle School after visiting and signing the contract for Chelsea School and expressing the opinion that "the smaller facility footprint, enrollment, and class sizes at [Chelsea School] are [likely] more desirable to Student and Petitioners than the circumstances at [New Deal School].") The Hearing Officer explained however that the "IDEA does not require a local education agency to maximize the services to disabled students, but to provide those services that are reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Am. HOD on Remand, ECF No. 26-1, at 21. Accordingly, this Court finds that Plaintiffs' challenges to the Hearing Officer's conclusion that "the program proposed by DCPS is more than adequate to meet [E.W.- G's] documented academic needs," *see* Am. HOD on Remand, ECF No. 26-1, at 17, are unpersuasive.

**3. Student's Social/Emotional Issues**

The Hearing Officer was tasked with considering whether the IEP was "reasonably calculated" to enable Plaintiff's progress in "light of her circumstances," Memorandum Opinion and Order, ECF No. 16, at 13, where such circumstances include social and emotional issues. The Hearing Officer noted that the Student was not diagnosed with ADHD, although Student's behaviors were "consistent with "suspected" ADHA." Am. HOD on Remand, ECF No. 26-1, at 18, 22. Addressing the Student's inattentiveness, the Hearing Officer indicated that "[i]n the 2016 Psychological Assessment Addendum, neither Petitioner/mother nor Student's teacher questionnaire response resulted in significantly elevated scores related to inattention." Am. HOD on Remand, ECF No. 26-1, at 18. Furthermore, "in the two years prior to the IEP meeting," there had been no "teacher [who] ha[d] confirmed inattentiveness in the context of an

evaluation[.]"[5] *Id.* Additionally, the Student's November 2018 Progress Report praised her for demonstrating a level of independence and organization. *Id.* Accordingly, the Hearing Officer concluded that "at least through the first reporting period of the 2018-2019 school [year], there [was] no credible evidence whatsoever in the record that Student exhibited inattentiveness in the classroom to the level that would require extensive services." *Id.* Furthermore, "[t]he record does not support that [the Student's] behavior is so disruptive, or so significantly impairs her ability to access the curriculum, that a highly restrictive environment is the appropriate solution." *Id.* at 21.

The Hearing Officer did acknowledge that E.W.-G.'s "behavior during the second half of the 2018-2019 school year complicated the development of an appropriate program." Am. HOD on Remand, ECF No. 26-1, at 16. He indicated however that "if Student's very limited academic deficits do not warrant an extensive amount of specialized instruction, it can only be justified if his/her behavior, executive functioning deficits, or inattention are so extreme as to warrant the additional services [but] the record [in this case] does not support intensive services for Student's social/emotional issues." Am. HOD on Remand, ECF No. 26-1, at 18. In sum, the Hearing Officer proffered that, in this case, the Student's IEP provided fifteen hours per week of specialized instruction and one hour per week of BSS, services which Student never received at the Oneness School, where Student still "made academic progress . . . despite his/her behavioral issues[.]" *See* Am. HOD on Remand, ECF No. 26-1, at 21 (noting that "considerably more services" would be received by the Student under the IEP than Student had previously received).

Besides examining the record evidence relating to Student's behavioral issues, the Hearing Officer acknowledged testimony by Paul Rubenstein, a Licensed Social Worker, that Student would

---

[5] Plaintiffs assert that the "IEP states at Page 2 that "E.W.-G. has ADHD. . ." but "[w]hether E.W.-G. does or does not have a diagnosis of ADHD is immaterial[.]" Pls. Mem., ECF No. 24-1, at 19.

elope from the classroom when she was overwhelmed, and she tended to laugh at her classmates and make mean-spirited comments. *Id.* at 7. The Hearing Officer noted however that while Mr. Rubenstein had participated in meetings with the Student's mother and teachers, he had "never conducted a formal observation of Student in the Classroom." Am. HOD on Remand, ECF No. 26-1, at 7 n. 27. The Hearing Officer noted that Dr. Solomon had observed the Student for approximately five cumulative hours over 4-5 times and stated that she "confirmed" Mr. Rubenstein's testimony about Student's elopement and mocking of her peers. *Id.* at n. 27. Plaintiffs argue that this acknowledgement of testimony by the Hearing Officer is inconsistent with his ultimate finding Paul Rubenstein's and Dr. Solomon's testimony regarding the Student's elopement and antisocial behavior was "anecdotal and exaggerated." Am. HOD on Remand, ECF No. 26-1, at 18. The Court disagrees with Plaintiffs' conclusion that this is inconsistent on its face. Before concluding that the testimony was "exaggerated" and "anecdotal," the Hearing Officer weighed the testimony against other aforementioned record evidence – namely, Student had not been diagnosed with ADHD; there were no elevated scores for inattentiveness in the 2016 Psychological Assessment questionnaire responses; the lack of teacher corroboration of inattentiveness in the two years prior to the IEP; and reports that Student demonstrated a "level of independence and personal organization" and carried out assignments accurately. Am. HOD on Remand, ECF No. 26-1, at 18.

To bolster their argument that Mr. Rubenstein and Dr. Solomon's assessment of E.W.-G. was not exaggerated, Plaintiffs reference some language from the IEP that discusses E.W.-G.'s difficulties with, *inter alia*, anger control and resisting impulses that "impact[ ] her progress in the general education curriculum." Pls.' Mem., ECF No. 24-1, at 17. But Plaintiffs' argument is misplaced for two reasons. First, the Hearing Officer did not deny that E.W.-G. had behavioral issues; rather, he disputed that the record in this case indicated that E.W.-G.'s behavioral issues were so serious as to warrant placement in a more restrictive environment. Second, the IEP in this case took into account that the Student had behavior issues

that hindered her academic performance, and as such, the IEP prescribed ten hours weekly of specialized instruction outside general education (and five hours weekly inside general education) as well as specific behavioral services. Accordingly, as the Hearing Officer was in the best position to assess the credibility of the witnesses, particularly when measured against the entirety of the record, this Court denies Plaintiffs' challenge to the Hearing Officer's conclusion that the Student's "behavior, executive functioning deficits, or inattention" were not so extreme as to warrant services additional to those provided by the IEP. *See United States v. Vega*, 826 F.3d 514, 543 (D.C. Cir. 2016) ("[C]redibility determinations are entitled to the greatest deference") (quotation omitted).

**4. Relevance of the Reason that Student was Not Invited back to Oneness School**

As part of his analysis of the appropriateness of the IEP, the Hearing Officer looked for the reasons why Oneness School "disinvited Student to return for the 2019-20 school year." Am. HOD on Remand, ECF No. 26-, at 18-19. He proffered that there was no documentation or testimony to explain this, and in fact, "t[he only negative comments in the meager records offered by Petitioner from [Oneness School] relate to Student's laughing at her/his classmates." *Id.* at 19. The Hearing Officer found it "inappropriate to speculate as to the reason," [for the disinviting] but he did note that it was only after that happened that Student applied to Chelsea School and was accepted. *Id.* Subsequently, Dr. Solomon concluded that the Student was "incapable of progressing in a less than full-time special education environment," with a "small student to teacher ratio," because of her "social/emotional, executive functioning, and inattentiveness issues." *Id.* According to the Hearing Officer, this conclusion by Dr. Solomon stood in contrast to her earlier evaluations of Student that were supportive of continued enrollment at Oneness School. *Id.*

Plaintiffs surmise that the Hearing Officer attempts to discredit Dr. Solomon. They argue that, even as early as 2017, Dr. Solomon supported Student attending Oneness "as long as she receives all the supports recommended in this report and is seen for a medical consultation," and Dr. Solomon recommended also

that the Student's parents visit other schools and consider beginning the process of obtaining special education. Pls.' Mem., ECF No. 24-1, at 20 (referencing Dr. Solomon's 2017 report). Plaintiffs contend further that Dr. Solomon's concerns about E.W.-G. are supported by DCPS's own psychologist, who concluded that the Student appears to have difficulty with self-regulation and will require support in and out of the classroom. Pls. Mem., ECF No. 24-1, at 21.

The Court finds that the Hearing Officer's fourth "reason" for his decision is not actually a "reason" supporting his decision but instead, an observation that draws attention to the timing of the educational consultant's challenge to the Student's DCPS placement. Plaintiffs, in turn, point to some record evidence that demonstrates that the educational consultant raised some general objections earlier in time. As such, this fourth "reason" stands in equipoise.

**5. Records regarding Student's Inattention**

The Hearing Officer indicated that the "only records submitted from [Oneness School] reveal that Student was performing at grade level in a general education class of 18 students [and] [t]he Progress Reports do not support that s/he presented anything other than age-appropriate inattention[.]" *See* Am. HOD on Remand, ECF No. 26-1, at 19 (noting that the progress Reports were consistent with the conclusion in the 2016 Psychological Assessment regarding this issue). Furthermore, the Hearing Officer found that the "only support in the record from [Oneness School] for Student's performance being affected by inattentiveness is [Ms. Hannah Chick's] comments to [Ms. Delisa Green] in July 2019, long after Student had departed [Oneness School], that Student was not performing on grade level. " *Id.* The Hearing Officer contrasted this with progress reports from other teachers and concluded that Ms. Chick's comments did not "justify the level of restrictiveness requested by Petitioner." *Id.*

Plaintiffs challenge these statements by the Hearing Officer insofar as Ms. Chick's "assessment of E.W.-G. does not "stand alone" as the Hearing Officer suggests, but rather aligns precisely with the

testimony of Mr. Rubenstein . . . who described E.W.-G. as being overwhelmed, fleeing the classroom, and when in the classroom requiring one-on-one attention." Pls. Mem., ECF No. 24-1, at 23. While Ms. Chick's assessment may well be consistent with Mr. Rubenstein's testimony, and while the Hearing Officer acknowledged both, as previously discussed herein, the Hearing Officer noted that Mr. Rubenstein never formally observed the Student in the classroom, and the Hearing Officer characterized Mr. Rubenstein's statements as "exaggerated." In this case, the Hearing Officer weighed Ms. Chick's assessment against other record evidence assessments that are somewhat inconsistent, and he gave less credence to Ms. Chick's assessment. "It is undisputed that 'the hearing officer is best positioned to make credibility judgments as to testifying witnesses and resolve factual disputes that amount to inconsistent testimony.'" *A.D. v. District of Columbia*, 20-cv-2765 (BAH), 2022 WL 683570, at *11 (D.D.C. March 8, 2022) (quoting *J.T. v. District of Columbia*, 496 F. Supp. 3d 190, 207 (D.D.C. 2020)). As previously noted herein, on an IDEA appeal, courts do not have "unfettered review" but instead must give "due weight" to the administrative proceedings and "afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." *Gill*, 751 F. Supp. 2d at 108-109. Accordingly, the Court finds that Plaintiffs' challenge to the Hearing Officer's weighing of Ms. Chick's assessment fails.

**B. Timing of the Amended HOD on Remand**

Finally, Plaintiffs argue that Defendant denied E.W.-G. a FAPE "by failing to provide a revised HOD within a reasonable time." Pls.' Mem., ECF No. 24-1, at 38. In support of this argument, Plaintiffs rely on the fact that the IDEA "prescribes a specific time frame for due process disputes to be decided," and furthermore, the "HOD [ ] must be rendered no later than 45 days after the expiration of the resolution period." *Id.; see* 20 U.S.C. § 1415(f)(1)(B)(ii). Plaintiffs cite cases that rely on a failure to provide a timely HOD or due process hearing, but in the instant case, Plaintiffs do not suggest that the initial HOD was untimely filed. Rather, Plaintiffs contest the timing of the Amended HOD on Remand, and none of the

cases cited by Plaintiffs address this issue, nor is there a time frame set out in the IDEA relevant to HODS issued after remand.

Plaintiffs ignore also that this Court ordered Defendant to file a status report by March 1, 2022, to explain why the Hearing Officer "had yet to issue a new Determination and when such a Determination can be expected to issue." February 26, 2022 Minute Order. Defendant filed its [19] status report on March 1, 2022, indicating reasons for the delay (workload and family emergency circumstances) and proposing an expected delivery date of March 28, 2022 for the remand HOD. The Court did not alter this proposed delivery date, and in this case, the HOD on Remand was issued on March 25, 2022, and amended and re-issued on March 27, 2022. Accordingly, this Court denies Plaintiffs' argument that the timing of the provision of the Amended HOD on Remand constitutes a denial of FAPE.

## IV. CONCLUSION

Plaintiffs argue that this case is similar to *E.W. v. District of Columbia*, Case No. 21-cv-1598 (FYP/GMH), ECF 20 [Report and Recommendation] (May 11, 2020), at 10-20, where the court found that the Hearing Officer (same one as in this case) failed to consider the totality of the evidence and proffered "meager and insufficient analysis" and the Defendant was chastised for arguing affirmance of the HOD on grounds not considered by the Hearing Officer. Pls. Reply, ECF No. 28, at 2-3. The Court notes that, in this case, while the Defendant cited to testimony and portions of the Administrative Record that may or may not have been considered by the Hearing Officer, the Court looked to the Hearing Officer's decision and the sources he relied upon in making its decision.

Defendant asserts that this case is more similar to *A.D. v. District of Columbia*, No. 20-cv-2765 (BAH), 2022 WL 683570 (D.D.C. Mar. 8, 2022) (involving the same Hearing Officer), which also involved a dispute about the extent of specialized instruction outside of general education that was adequate to meet the child's academic and behavioral needs and a challenge to the proposed placement selected by

DCPS. In that factually similar case, Chief Judge Beryl Howell found that the Hearing Officer properly weighed the witness testimony and other record evidence, and his HOD properly assessed the adequacy of the IEP and provided sufficient evidence to support the conclusion that the IEP satisfied the requirements of the IDEA.

Having reviewed the Hearing Officer's Amended HOD on Remand, this Court concludes that the Hearing Officer correctly determined that the August 21, 2019 IEP was reasonably calculated to enable E.W.-G. to make progress appropriate in light of her circumstances. *See generally Endrew F.*, 580 U.S. at 399-400. Furthermore, the Hearing Officer's conclusion is supported by record evidence, some of which is specifically discussed in the Findings of Fact set forth in the Hearing Officer's Amended HOD on Remand and other evidence that is mentioned more generally throughout the Hearing Officer's analysis. Contrary to Plaintiffs' contentions, the Hearing Officer provides a clear analysis that demonstrates why the IEP "actually offered" by the District was "reasonably calculated" to meet E.W.-G.'s academic and behavioral needs, which is what he was tasked to do on remand. The party challenging the underlying HOD bears "the burden of persuading the [reviewing] court that the hearing officer was wrong." *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988). In this case, the Plaintiffs have failed to meet their burden to persuade this Court that the Hearing Officer was wrong. Accordingly, this Court need not address Plaintiffs' ultimate argument that tuition reimbursement is the appropriate remedy in this case.

__________/s/____________________
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE